**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| JOSHUA A. SCHWEIG,<br><br>Plaintiff,<br><br>v.<br><br>LATOYA HUGHES, et al.,<br><br>Defendants. | Case No. 3:25-cv-50507<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Joshua Schweig, an inmate at Dixon Correctional Center, brings this action under 42 U.S.C. § 1983 against various prison officials and medical personnel. He alleges cruel and unusual punishment in violation of the Eighth Amendment and medical negligence under Illinois law. Before the Court is Dixon Warden Andrea Tack, Acting IDOC Director Latoya Hughes, Officer Peter Knudson, and Superintendent William Bruno's (IDOC Defendants) motion to dismiss Counts I and IV under Rule 12(b)(6) and Officers Christopher Cederholm and Jeffrey Dalke's motion for judgment on the pleadings as to Count I under Rule 12(c). For the reasons stated below, IDOC Defendants' Rule 12(b)(6) motion [75] is granted in part and denied in part and Cederholm and Dalke's Rule 12(c) motion [77] is denied.

## I. Background[1]

On November 6, 2023, Schweig began experiencing seizures and focal neurological deficits while incarcerated at Dixon Correctional Center. Dkt. 72 at ¶¶ 1, 2. He was diagnosed with an intracerebral hemorrhage involving a left frontal lesion on November 9, 2023. *Id.* at ¶ 26. After this diagnosis, Schweig repeatedly reported his seizures, headaches, right-sided weakness, and other neurological symptoms to Dixon medical and correctional staff. *Id.* at ¶ 31. Rather than obtaining emergency care or a neurological evaluation for Schweig, Dixon staff documented his symptoms as "not consistent" with seizure activity and merely stated that they would notify a nurse. *Id.* at ¶¶ 6, 33–35. According to University of Illinois (UI) Health records, Katherine Shaw Bethea Hospital ordered Schweig to undergo an interval MRI and neurological follow-up around this time, but Dixon staff failed to coordinate these follow-ups. *Id.* at ¶¶ 28, 37, 85.

After a November 23 CT scan revealed an interval increase in left frontal mass and a probable new hemorrhage, Katherine Shaw Bethea Hospital transferred Schweig to UI Health for higher quality neurological care. *Id.* at ¶ 7. UI Health imaging revealed a left frontal hematoma or hemorrhagic lesion with marked vasogenic edema, mass effect, ventricular effacement, and significant midline shift. *Id.* at ¶¶ 8, 46. On December 6, 2023, Schweig underwent a craniotomy and hematoma evacuation. *Id.* at ¶ 49. After this procedure, Schweig filed grievances

[1] These allegations are taken from the First Amended Complaint [7] and related documents properly before the Court. The Court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

with Dixon's Grievance Office that detailed the prison officials' failure to follow outside medical orders or otherwise coordinate treatment despite his visible symptoms and repeated complaints during the weeks before his procedure. *Id.* at ¶¶ 83–86; *see* Dkt. 72-7. Dr. Eesha Singh, a neurologist at UChicago Medicine, reviewed Schweig's medical records and opined that the delay in evaluating and treating Schweig's neurological symptoms resulted in permanent neurological injury. Dkt. 72 at ¶ 79–80.

Following his craniotomy, Schweig faced an increased risk of head trauma from any use of force or rough handling. *Id.* at ¶ 52. On June 6, 2024, Officer Cederholm entered Schweig's cell and struck and restrained him without apparent justification. *Id.* at ¶ 55. Officer Dalke joined the attack, slammed Schweig to the ground, and encouraged Cederholm to "put this motherfu*ker on his head." *Id.* at ¶ 56. Officer Knudson was present during this incident and did nothing to intervene or stop the attack. *Id.* at ¶ 57. Following the incident, Dixon staff—particularly, Superintendent Bruno—characterized the event as an altercation between Schweig and his cellmate and failed to document Cederholm's use of force. *Id.* at ¶ 58.

Schweig filed his First Amended Complaint against IDOC Director Hughes, Warden Tack, Dixon Medical Director Dr. Sy, Wexford Health Sources Inc., Officer Cederholm, Officer Dalke, Officer Knudson, and Superintendent Bruno. Dr. Sy, Wexford Health, Cederholm, and Dalke answered. Hughes and Tack now move to dismiss Count I, and Knudson and Bruno move to dismiss Count IV, all under Rule

12(b)(6). Cederholm and Dalke move for judgment on the pleadings as to Count I under Rule 12(c).

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper when "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Id.* at 558. Although the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The Court's inquiry at the pleading stage is confined to "the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## III. Analysis

Schweig brings claims under Count I for deliberate indifference to his serious medical needs against "Dr. Sy, Unknown Medical Staff, Warden Tack, and Other Individual Defendants." Dkt. 72 at 17. Defendants Tack and Hughes now move to

dismiss the Count I claims against them for failure to state a claim under Rule 12(b)(6).

**a. Hughes and Tack's Motion to Dismiss Count I**

Hughes and Tack first argue that Schweig fails to state a claim for deliberate indifference to a serious medical need because he hasn't alleged enough facts to suggest that they were personally involved in delaying Schweig's medical care. Dkt. 75 at 4. Second, they contend that Schweig hasn't alleged enough facts to show that they had knowledge of Schweig's serious medical need. *Id.*

To state an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must allege enough facts to plausibly suggest that he suffered from an objectively serious medical condition and that the defendants were deliberately indifferent to that condition. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). In this case, there is no dispute as to whether Schweig's alleged condition was objectively serious, so the focus is on whether he has sufficiently alleged deliberate indifference.

"Deliberate indifference entails something more than mere negligence but something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 752 (7th Cir. 2021) (cleaned up). A defendant is deliberately indifferent when he realizes that a substantial risk of serious harm to the plaintiff exists but disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("[T]he official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."). "An inmate's correspondence to a prison administrator may thus establish a basis for personal liability under § 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation." *Perez*, 792 F.3d at 781–82.

If a prison official knows about an excessive risk to an inmate's health or safety and facilitates, approves, condones, or turns a blind eye to it, he has acted with deliberate indifference. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) ("Once the official knows of that risk, the refusal or declination to exercise the authority of his or her office may reflect deliberate disregard."). Further, prison officials who intentionally delay or deny an inmate access to medical care or otherwise interfere with prescribed treatment are deliberately indifferent to an inmate's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). But prison supervisors can't be liable for the unconstitutional conduct of their subordinates, as the doctrine of *respondeat superior* doesn't apply to claims under § 1983. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Schweig's deliberate indifference claims against Hughes and Tack are based on their alleged knowledge of his serious neurological symptoms and their failure to follow treatment instructions from Katherine Shaw Bethea Hospital or otherwise provide Schweig with medical care. Dkt. 72 ¶¶ 25–37. Schweig contends that Hughes and Tack knew that he suffered a brain hemorrhage and continued to

experience seizures and focal deficits, but they nonetheless treated his situation as non-emergent. Dkt. 87 at 9.

The First Amended Complaint alleges that Hughes and Tack's failure to coordinate Schweig's treatment between his hemorrhage diagnosis on November 9, 2023, and his transfer to UI Health on November 23, 2023, resulted in permanent neurological injury to Schweig. Dkt. 72 at ¶ 79–80. Therefore, for Schweig to maintain a deliberate indifference claim against Hughes and Tack, he must allege enough facts to plausibly suggest that they actually knew about his serious medical needs during this period. *See Farmer*, 511 U.S. at 837. He argues that the grievance materials attached as Exhibit 7 to the First Amended Complaint support an inference that Hughes and Tack were aware of his needs. Dkt. 87 at 7.

Schweig asserts that these grievance materials "reflect review at the institutional Chief Administrative Officer level and appeal to the Administrative Review Board." *Id.* According to Schweig, these materials, along with his allegations that Tack was serving as Dixon's Warden and Hughes was serving as IDOC's Director, allow the Court to reasonably infer that Tack and Hughes learned about Schweig's serious medical needs and had the authority to act. *Id.*

Yet, as Hughes and Tack point out, all the grievance materials in Exhibit 7 are dated *after* Schweig received treatment in the form of a craniotomy on December 6, 2023. *See* dkt. 72-7. If the grievance materials were the only means by which Hughes and Tack allegedly learned about Schweig's serious medical needs, they didn't learn about those needs until after they were treated through his

craniotomy. So, these grievances don't show that Hughes or Tack knew about Schweig's condition or his need for treatment between November 9 and November 23, 2023, the period in which he alleges that Hughes and Tack were deliberately indifferent to his condition. *See Yates v. Grusen*, No. 19-CV-00362, 2019 U.S. Dist. LEXIS 69620, at *5 n.2 (S.D. Ill. Apr. 23, 2019) (warden's review of grievances filed after plaintiff already received treatment couldn't support deliberate indifference claim against warden).

To be sure, Schweig alleges that he repeatedly reported his worsening neurological symptoms "to Dixon medical and correctional staff" after his November 9 diagnosis. Dkt. 72 at ¶ 31. But without facts suggesting that Hughes or Tack received those reports or otherwise learned of them, these allegations can't support an inference that they knew about Schweig's serious medical needs during the relevant period. *See Taylor v. Hyatte*, No. 3:23-CV-183, 2023 U.S. Dist. LEXIS 117744, at *7 (N.D. Ind. July 7, 2023) (plaintiff's allegations that he told correctional staff that he was concerned about his safety was insufficient to show that warden knew about specific threat); *Gonzalez v. Obaisi*, No. 13-CV-5766, 2016 U.S. Dist. LEXIS 172634, at *36 (N.D. Ill. Dec. 13, 2016) ("[T]he mere lack of medication upon leaving the Health Care Unit, the existence of headaches, and a request for a crutch could not be expected to put [the warden] on notice that a serious medical condition existed."); *see also Delgado v. Ghosh*, No. 11-CV-05418, 2016 U.S. Dist. LEXIS 9116, at *11–12 (N.D. Ill. Jan. 27, 2016) (plaintiff's allegations that wardens "knew" of his injuries, "knew" he wasn't receiving medical

care, and "knew" of his grievances were "too conclusory to state a claim"); *Dugas v. Cain*, No. 09-0177, 2010 U.S. Dist. LEXIS 120264, at *15 (M.D. La. Oct. 20, 2010) ("that the plaintiff may have made requests for medical attention in an institution housing more than 5,000 inmates does not establish any particularized knowledge on the part of the supervisory defendants, in the absence of an allegation that the defendants were personally involved in his health care.").

Further, Schweig points to no other allegations that support a reasonable inference that Hughes and Tack knew about his serious medical during the period he needed treatment. Because Hughes and Tack's actual knowledge during that period is essential to Schweig's deliberate indifference claim, that claim cannot proceed against them without such allegations. Count I is dismissed against Hughes and Tack without prejudice.

**b. Knudson and Bruno's Motion to Dismiss Count IV[2]**

Schweig brings failure to intervene claims against Knudson and Bruno for their acts and omissions relating to Cederholm and Dalke's alleged assault against Schweig. Knudson and Bruno move to dismiss those claims under Rule 12(b)(6).

"Prison officials must intervene to prevent constitutional violations that they know about and have a realistic opportunity to prevent." *Dobbey v. Jeffreys*, 417 F. Supp. 3d 1103, 1113 (N.D. Ill. 2019). To state a claim for failure to intervene, a plaintiff must plead enough facts to plausibly suggest that the defendant (1) knew

[2] Count IV also includes an excessive force claim against Cederholm and Dalke, Dkt. 72 at 23, but Cederholm and Dalke don't dispute the sufficiency of Schweig's claims under Count IV. Dkt. 77 at 2 n.1. So, only the failure to intervene claims under Count IV are relevant to this motion.

that another official was using excessive force or otherwise committing a constitutional violation and (2) had a realistic opportunity to intervene to prevent the act. *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1270 (N.D. Ill. 2021). A realistic opportunity to intervene exists when an official could've called for backup, called for help, or at least warned the other official to stop. *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005). Whether an official had sufficient time to intervene "almost always implicate[s] questions of fact for the jury." *Id.*

With these principles in mind, the Court addresses whether Schweig has stated a failure to intervene claim against Knudson or Bruno.

***i. Knudson***

Knudson contends that Schweig hasn't alleged enough facts to suggest that he had a realistic opportunity to intervene in Cederholm and Dalke's alleged assault. Dkt. 89 at 7. He further argues that Schweig's allegation that he "was present during the incident and had an opportunity to intervene, protect Plaintiff, summon assistance, or caution the officers to stop" is conclusory and therefore the Court shouldn't accept it as true at this stage. *Id.* (quoting dkt. 72 at ¶ 117.).

Knudson doesn't dispute that Schweig has plausibly alleged that he was subject to excessive force. Further, Schweig's allegation that "Knudson was present during the incident," Dkt. 72 at ¶ 117, allows the Court to infer that Knudson knew that Schweig was subject to excessive force. *Rivera v. Town of Cicero*, No. 19-C-3728, 2020 U.S. Dist. LEXIS 120488, at *8 (N.D. Ill. July 9, 2020) (defendant's presence and silence at scene of unlawful search and arrest gave rise to reasonable inference that defendant knew about unlawful conduct). So, the central dispute is

whether Schweig plausibly alleged that Knudson had a realistic opportunity to intervene in Cederholm and Dalke's assault against Schweig.

Schweig contends that his allegations of an assault that included more than one act of force and an opportunity for verbal encouragement describe "an unfolding sequence." Dkt. 87 at 10. According to Schweig, this alleged sequence lasted long enough to plausibly suggest that Knudson had time to intervene. *Id.* He further argues that the claim must proceed because the question of whether the sequence afforded Knudson a realistic opportunity to intervene is fact-intensive and cannot be resolved against him at the pleading stage. *Id.* at 3.

Knudson is correct that the Court need not accept as true Schweig's assertion that Knudson "had an opportunity to intervene." Dkt. 72 at ¶ 117. But Schweig alleges more: that Cederholm entered his cell and assaulted him, that Dalke later joined and verbally encouraged the assault, and that Knudson was present at the scene. Dkt. 72 at ¶¶ 55–57. Accepting these allegations as true, the sequence lasted long enough for Knudson to have acted. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) ("Although Yang's complaint fails to *explicitly* specify the existence of an opportunity for Officer Hardin to have intervened, the facts demonstrate several opportunities during which Hardin could have acted. . . . Officer Hardin could have called for a backup, called for help, or at least cautioned Officer Brown to stop.") (emphasis in original); *see also Maxson v. Dwyer*, No. 16-C-9417, 2017 U.S. Dist. LEXIS 63038, at *14 (N.D. Ill. Apr. 26, 2017) (plaintiff stated a failure to intervene claim because the complaint "clearly identifie[d] that certain defendants beat

plaintiff and that other defendants were present but did nothing."). Because Schweig's allegations support an inference that Knudson had a realistic opportunity to intervene, Schweig has stated a failure to intervene claim against Knudson.

### *ii. Bruno*

Bruno argues that because the First Amended Complaint doesn't allege that he was physically present during the alleged assault or could've stopped it, Schweig has failed to state a failure to intervene claim against him. Dkt. 89 at 8.

Schweig alleges that after he reported to Superintendent Bruno that Officers Cederholm and Dalke had assaulted him, Bruno falsely characterized the incident as a fight between Schweig and his cellmate. Dkt. 72 at ¶ 118. Schweig's failure to intervene claim against Bruno is based on Bruno's "failure to take reasonable protective, investigative, and evidence-preservation steps" after learning about the assault, along with his false characterization of the incident after the fact. *Id.* at ¶ 119.

Schweig concedes, however, that he "does not allege that Bruno was physically present in the cell and could have stopped force that had already ended" and that "a failure to investigate a completed event, standing alone, is not itself a constitutional tort." Dkt. 87 at 10–11. Moreover, Schweig offers no authority to support his argument that Bruno's mischaracterization of the assault after it occurred gives rise to a failure to intervene claim, *see id.*, so he forfeits this argument. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise

constitutional issues).”). Because Schweig doesn’t allege any facts that suggest Bruno knew about or had a realistic opportunity to intervene in the assault, he can’t maintain a failure to intervene claim against Bruno. Count IV is dismissed against Bruno without prejudice.

**c. Cederholm and Dalke’s Motion for Judgment on the Pleadings**

Cederholm and Dalke move for judgment on the pleadings only as to Count I. *See* dkt, 77 at 2. Schweig clarifies, however, that he “does not maintain a Count I medical-delay claim against Cederholm or Dalke.” Dkt. 87 at 2. Accordingly, Cederholm and Dalke’s motion for judgment on the pleadings is denied as moot.

**d. Qualified Immunity**

IDOC Defendants argue that they are entitled to qualified immunity on Schweig’s claims under Counts I and IV because Schweig fails to allege any violation of a clearly established constitutional right. Dkt. 75 at 12.

Qualified immunity shields government officials from individual liability under § 1983 unless (1) the official violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). When presented with a qualified immunity defense, the plaintiff bears the burden of showing that the right was clearly established at the time of the defendant’s conduct. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 915 (7th Cir. 2015). A plaintiff shows that a right is clearly established by pointing to a “closely analogous case,” or, alternatively, by showing that the defendant’s conduct was “so egregious and unreasonable” that no

reasonable official could've thought he was acting lawfully. *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018).

Qualified immunity typically turns on the facts of the case, so courts generally don't dismiss complaints at the pleading stage on qualified-immunity grounds. *Id*. at 548. Indeed, a defendant raising qualified immunity in a motion to dismiss faces a "more challenging standard of review" than would apply on summary judgment with the benefit of the factual record. *Id*. at 549. A complaint may be dismissed on qualified-immunity grounds when it is "clear on the face of the complaint that the constitutional right invoked was not clearly articulated in the case law." *Doe v. Purdue Univ.*, 928 F.3d 652, 665 (7th Cir. 2019).

The Court need not reach the issue of qualified immunity as to Defendants Hughes, Tack, and Bruno, because, as discussed above, Schweig hasn't stated any claims against them. *See Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1057 (7th Cir. 2011). So, the Court focuses only on Knudson's argument that he is entitled to qualified immunity on Schweig's failure to intervene claim under Count IV.

Schweig argues that at the time of Cederholm and Dalke's alleged assault against him, it was clearly established that "an officer who is present for an ongoing use of excessive force and has a realistic opportunity to intervene must do so." Dkt. 87 at 12. To support this argument, Schweig cites *Yang*, 37 F.3d at 285.

Knudson responds that the cases Schweig cites "stand for broad statements of the alleged rights at stake, which will not show the Defendants' specific conduct was clearly-established to violate a constitutional right." Dkt. 89 at 9. Yet a plaintiff

may defeat a qualified immunity defense even if there are no previous cases involving nearly identical facts, so long as the case law provided a reasonable warning that the defendant's conduct violated the Constitution. *Estate of Escobedo v. Bender*, 600 F.3d 770, 781 (7th Cir. 2010). And it has been clearly established for thirty years in the Seventh Circuit that an officer violates an individual's constitutional rights by failing to intervene in another officer's use of excessive force when he has a realistic opportunity to prevent further harm. *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022) (citing *Yang*, 37 F.3d at 285). Further, Knudson fails to explain how his alleged conduct was somehow distinct from the conduct at issue in *Yang*.

Accepting as true Schweig's allegations that Cederholm entered his cell and assaulted him, that Dalke later joined and verbally encouraged the assault, and that Knudson was present at the scene but failed to intervene, Schweig has alleged a constitutional violation by Knudson that was clearly established at the time. Knudson isn't entitled to qualified immunity at this stage of the litigation.

**e. Indemnification**

Defendants seek dismissal of Count VI to the extent that Schweig intends to add the State of Illinois as a party. Dkt. 75 at 13. Schweig responds that "[t]he State is not named as a defendant," Dkt. 87 at 12, so this issue is moot.

## IV. Leave to Amend

Schweig contends that, if his claims are dismissed, the Court should grant him leave to amend his complaint to add new factual allegations to cure any deficiencies. Dkt. 87 at 13.

Rule 15(a)(2) instructs district courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, after granting a motion to dismiss, a court should grant leave to amend, unless doing so would be futile or unwarranted. *O'Boyle v. Real Time Resols., Inc.*, 910 F.3d 338, 347 (7th Cir. 2018). "The law is clear that a court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted." *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). "But those instances are the clear exception; the norm remains affording a plaintiff at least one opportunity to amend his complaint." *Id.* "As a best practice, only after receiving full briefing on the issue should a district court deny a party's motion to supplement a complaint based on futility." *Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 979 (7th Cir. 2025).

In this case, Schweig didn't file a motion under Rule 15 and attach the proposed pleading. No doubt, that procedure is best practice and one that courts can rightfully require. *See United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361–62 (11th Cir. 2006); *Dynasty Int'l LLC v. Lexington Ins. Co.*, Case No. 2:15-CV-374 JD, 2016 U.S. Dist. LEXIS 78443, at *15 (N.D. Ind. June 16, 2016) ("A motion to amend a complaint, however, must be filed separately, rather than incorporated into a response to a motion to dismiss."); *see also* Fed. R. Civ. P. 7(b).

Yet courts have discretion to require compliance with this best practice. *In re Allergan ERISA Litig.*, 975 F.3d 348, 358 n.16 (3d Cir. 2020); *McLaughlin v. Anderson*, 962 F.2d 187, 195 (2d Cir. 1992). The Court exercises its discretion to excuse Schweig from filing a Rule 15 motion with an attached proposed pleading, particularly because Defendants agree that Schweig's deficient claims "should be dismissed without prejudice." Dkt. 89 at 1. Further, granting leave to amend wouldn't be futile, because Schweig could cure the defects in his deliberate indifference claims against Hughes and Tack by adding facts showing that they obtained actual knowledge of his serious medical needs during the period that he needed treatment. *See Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). Schweig's request for leave to amend his First Amended Complaint is granted.

## V. Conclusion

For these reasons, Defendants Hughes, Tack, Knudson, and Bruno's Rule 12(b)(6) motion to dismiss [75] is granted in part and denied in part. Count I is dismissed against Hughes and Tack without prejudice and Count IV is dismissed against Bruno without prejudice. Schweig may proceed on Count IV against Knudson. Cederholm and Dalke's motion for judgment on the pleadings as to Count I [77] is denied as moot in light of Schweig's clarification that he doesn't maintain claims against them under Count I. Schweig's request for leave to file an amended

complaint [87] is granted. Any amended complaint must be filed by November 30, 2026.

Entered: November 6, 2026

By: ______________________

Iain D. Johnston
U.S. District Judge